UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AQUATECTONICS, INC. doing business as
Loebs & Gordon PoolCraft,

                Plaintiff,             **MEMORANDUM AND ORDER**
                                                           10-CV-2935 (DRH) (ARL)
              - against -

THE HARTFORD CASUALTY INSURANCE
COMPANY,

                Defendant.
-----------------------------------------------------------X
**APPEARANCES:**

**LAZER, APTHEKER, ROSELLA & YEDID, P.C.**
Attorneys for Plaintiff
225 Old Country Road
Melville, New York 11747
By:    Zachary Murdock, Esq.

**LAZARE POTTER & GIACOVAS LLP**
Attorneys for Defendant
950 Third Avenue
New York, New York 10022
By:    Stephen M. Lazare, Esq.
        Jeremy M. Sokop, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Aquatectonics, Inc. doing business as Loebs & Gordon PoolCraft ("Loebs") commenced this action against defendant The Hartford Casualty Insurance Company ("Hartford") in New York State Supreme Court, Suffolk County seeking a declaratory judgment that Hartford is obligated to defend and indemnify Loebs in a separate underlying suit for negligence and breach of contract. Loebs also asserts a breach of contract claim against Hartford. On June 24, 2010, Hartford removed the action to this Court based upon diversity jurisdiction. Presently before the Court is Loeb's motion for summary judgment, as well as Hartford's cross-

motion for summary judgment. For the reasons set forth below, Loeb's motion is denied and Hartford's motion is granted.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local Rule 56.1 Statements, are undisputed unless otherwise noted.

*The Parties*

Hartford is an insurance company that was, at all relevant times, licensed and authorized to underwrite and issue commercial and property insurance coverage, including commercial general liability ("CGL") coverage, in the State of New York. Hartford issued a CGL policy of insurance to Loebs with a coverage period of February 15, 2008 through February 15, 2009 (the "Policy.")

*The Policy*

Pursuant to the Policy, Hartford agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that is "caused by an 'occurrence.'" (Decl. of Deborah Hauser, dated May 6, 2011 ("Hauser Decl."), Ex. A-2 at 1.) The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions." (*Id.* at 15.) "Property damage" is defined as "[p]hysical injury to tangible property." (*Id.* at 16.)

The Policy contains numerous exclusions from coverage. The "Damage to Property" exclusion precludes coverage in two situations relevant here. First, it excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or

2

replaced because 'your work' was incorrectly performed on it."[1] (*Id.* at 4.) Second, it excludes from coverage any property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." (*Id.*)

Finally, the "Damage to Your Work" exclusion precludes coverage for property damage to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (*Id.*) The "Damage to Your Work" exclusion contains an exception, which states as follows: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor" (hereinafter, the "Subcontractor Exception"). (*Id.*)

***The Project***

In or about 2008, non-party K&D Wright & Co. Construction, Inc. ("K&D") was retained as a general contractor in connection with a residential construction project at 175 Mohawk Avenue, Water Mill, New York (the "Residence"). In 2008, K&D engaged Loebs as a subcontractor to construct and install a swimming pool (which would include the installation of glass mosaic tiles) at the Residence. Loebs, in turn, retained a sub-subcontractor, Pawel Bancerz d/b/a Top Tile ("Top Tile"), to install the glass mosaic tiles in the swimming pool. According to Richard Signoretti, the Loebs employee "primarily responsible for actual performance of the tile work in issue," "[p]rior to the job's completion, a mild 'shading' condition was visible at several

---

[1] "Your work" is defined as: "(1) Work or operations performed by you or on your behalf, and (2) Materials, parts or equipment furnished in connection with such work or operations," and includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,' and (2) The providing of or failure to provide warnings or instructions." (Hauser Decl., Ex. A-2 at 16.)

locations, consisting of geometric shapes that tracked some of the sheets of installed tiles; some of the shapes of the shading were straight lines, others were right angles, which I have heard called 'picture-framing.'" (Aff. of Richard Signoretti, dated Mar. 4, 2011 ("Signoretti Aff.") ¶¶ 1, 6.) Because the tiles used were a "custom blend," "when [K&D] personnel on the job asked [Signoretti] whether the mild shading they were seeing was part of how the tile installation was supposed to look, [he] told them that [he] didn't know." (*Id.* ¶ 7.) According to Signoretti, "[a]fter the pool was filled with water, [ ] the mild shading conditions that no one had previously stated to be unacceptable dramatically darkened and expanded," making it clear to Signoretti that "a dynamic process was going on." (*Id.* ¶¶ 8,9.) K&D ultimately determined that the installation of the glass mosaic tiles was unsatisfactory, and the work had to be re-done.

Signoretti, who participated in demolishing the tile job, is of the opinion "that a contributing factor to the damage was that the pool was filled with water too early in relation to the grouting, so that the grout not having cured sufficiently had allowed moisture to get behind the tiles that was affecting the condition of the setting bed." (*Id.* ¶¶ 11, 14.)[2] According to Signoretti, the darkening was attributable to "a physical change to the substrate" that lay beneath the pool tile. (*Id.* ¶ 15.) Signoretti asserts that "[m]uch of the work applying substrate and affixing tile was performed by Top Tile," and that "Top Tile grouted portions of the pool that ultimately sustained physical damage to the substrate." (*Id.* ¶¶ 16, 17.) The tile itself was not "physically injured[,] but had to be demolished because it was inextricably embedded in the physically injured substrate beneath it." (*Id.* ¶ 18.)

***The Underlying Action***

---

[2] Signoretti does not specify who made the decision to fill the pool.

At some point prior to December 18, 2008, Loebs notified Hartford that K&D had made an initial, pre-litigation claim regarding the pool. (Hauser Decl., Ex. D.) On January 21, 2009, Hartford set forth a reservation of rights based on the insuring agreements and the terms, conditions, and exclusions set forth in the Policy. (*Id.*, Ex. E.)

On or about August 6, 2009, K&D and non-party New York Marine and General Insurance Company, K&D's insurer, commenced an action against Loebs in New York State Supreme Court, Suffolk County (the "Underlying Action"). The Amended Complaint in the Underlying Action alleged that K&D and Loebs entered into an agreement in July 2008, pursuant to which Loebs "agreed to indemnify and hold harmless [K&D] from all claims, damages and losses, including legal fees, arising out of the performance of [Loebs's] work at the Project." (Aff'n of David K. O'Brien, dated Mar. 7, 2011 ("O'Brien Aff'n"), Ex. A ¶ 10.) The plaintiffs in the Underlying Action further alleged that Loebs "negligently, carelessly and recklessly constructed and installed the swimming pool at the Project, including the glass mosaic tiles, which resulted in several defects throughout the swimming pool." (*Id.* ¶ 11.) As a result, K&D "was required to remove the mosaic tile improperly installed . . . and purchase and install replacement mosaic tile, and incur other additional expenses in connection with remedying the defects . . . ." (*Id.* ¶ 12.) The Amended Complaint in the Underlying Action asserted six causes of action for negligence, breach of contract, and breach of express and implied warranties, and sought damages for the costs of remedying the defective work.

***Hartford Denies Coverage and Refuses to Defend or Indemnify Loebs***

Loebs timely notified Hartford of the commencement of the Underlying Action and submitted a claim seeking defense and indemnification pursuant to the Policy. Thereafter,

5

Hartford denied coverage and refused to defend or indemnify Loebs in the Underlying Action. Hartford asserted that there had been no "occurrence" within the meaning of the Policy, and also that various coverage exclusions applied, including the "Damage to Your Property" and "Damage to Your Work" exclusions. Loebs sent Hartford several letters informing it of Top Tile's involvement as a subcontractor, and argued, *inter alia*, that the Subcontractor Exception to the "Damage to Your Work" exclusion applied. (O'Brien Aff'n, Exs. I and K.) Hartford did not change its position, and this lawsuit followed.

## DISCUSSION

### I. Legal Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or

6

other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Finally, where "the sole question presented to the Court is the interpretation of a clear and

unambiguous written agreement, the issue is one of law and may properly be decided by the Court upon a motion for summary judgment." *Amin Realty, LLC v. Travelers Prop. Cas. Co.*, 2006 WL 1720401, at *3 (E.D.N.Y. June 20, 2006) (citing *Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 775 F. Supp. 606, 609 (S.D.N.Y. 1991), *aff'd*, 961 F.2d 387 (2d Cir. 1992)).

## II. The Duty to Defend

"Under New York law, it is axiomatic that the duty to defend is exceedingly broad and more expansive than the duty to indemnify." *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002). "Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint [in the underlying action] to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased." *Id.* (internal quotation marks omitted). "An insurer must defend whenever the four corners of the complaint suggest – or the insurer has actual knowledge of facts establishing – a reasonable possibility of coverage." *Id.* (internal quotation marks omitted).[3] "An insurer is relieved of the duty to defend only if 'there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co.*, 64 N.Y.2d 419, 424 (1985)).

---

[3] An insurer is required to "provide a defense whenever 'it has actual knowledge of facts establishing a reasonable possibility of coverage,'" and so in determining whether Hartford's duty to defend was triggered, the Court will refer not only to the allegations contained in the Amended Complaint in the Underlying Action, but also to the letters that Loebs sent to Hartford regarding Top Tile's role in the project. *See NWL Holdings, Inc. v. Discovery Prop. & Cas. Ins. Co.*, 480 F. Supp. 2d 655, 660 (E.D.N.Y. 2007) (citing *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 67 (1991)).

"Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage." *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002). Thus, "[a]n insured seeking to recover for a loss under any insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy." *Gongolewski v. Travelers Ins. Co.*, 675 N.Y.S.2d 299, 299 (2d Dep't 1998) (internal quotation marks omitted). In order to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that could fairly be placed thereon." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal alteration and quotation marks omitted).

### A. There was no "Occurrence" as That Term is Defined in the Policy

To partially reiterate, the New York Court of Appeals has made clear that "[t]he insured has the initial burden of proving that the damage was the result of an 'accident' or 'occurrence' to establish coverage where it would not otherwise exist." *Consol. Edison Co. of N.Y.*, 98 N.Y.2d at 220. "Once coverage is established, the insurer bears the burden of proving that an exclusion applies." *Id.*; *see also Amin Realty*, 2006 WL 1720401 at *3 ("'Once an insured has come forward with evidence of a loss covered by the insurance policy, the burden shifts to the insurer to show that the loss is excluded from coverage.'") (quoting *Jakobson Shipyard*, 961 F.2d at 389). Thus, the Court's "inquiry is twofold: whether an 'occurrence' is involved that gives rise to policy coverage and, if so, whether it falls within the [asserted] policy exclusion." *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 136 (2006); *see also Transp. Ins. Co. v. AARK*

9

*Constr. Grp., Ltd.*, 526 F. Supp. 2d 350, 356 (E.D.N.Y. 2007) ("[T]he threshold issue the Court must determine is whether the property damage to [the insured's] completed work product . . . was an 'occurrence' within the meaning of the policy.").

"It is well-settled under New York law that 'the issuer of a commercial general liability policy is not a surety for a construction contractor's defective work product.'" *Amin Realty*, 2006 WL 1720401 at *3 (quoting *Bonded Concrete, Inc. v. Transcon. Ins. Co.*, 12 A.D.3d 761, 762 (3d Dep't 2004)); *see also Cont'l Ins. Co. v. Huff Enters., Inc.*, 2010 WL 2836343, at *4 (E.D.N.Y. June 21, 2010); *AARK Constr. Grp.*, 526 F. Supp. 2d at 356. A CGL policy:

> does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage *to something other than the work product*. The policy was never intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for is defectively produced.

*George A. Fuller Co. v. United States Fid. & Guar. Co.*, 200 A.D.2d 255, 259 (1st Dep't 1994) (emphasis added); *see also Bonded Concrete, Inc.*, 12 A.D.3d at 762 (finding that "precedent dictates that [CGL] policies like defendant's were never intended to provide indemnification to contractors from claims that their work product was defective").

The Underlying Action alleges that faulty workmanship in connection with the installation of tile in the pool caused damage only to the pool – and not to anything other than the pool. Moreover, the Underlying Action seeks damages solely in connection with the costs incurred in remedying those defects. Because "an 'occurrence' of property damage under a CGL policy cannot exist where a [ ] contractor's 'negligent acts only affect[ ] [the property owner's] economic interest in the [work product],'" i.e., the sub-standard pool, the Court finds that the

10

property damage alleged in the Underlying Action did not arise from an "occurrence" under the Policy.[4] *See AARK Constr. Grp.*, 526 F. Supp. 2d at 357 (quoting *George A. Fuller Co.*, 200 A.D.2d at 259) (first alteration added) (finding no "occurrence" when "the alleged negligence [by a subcontractor retained by defendant general contractor] only affected [the property owner's] economic interest in [the] completed work product"); *Amin Realty*, 2006 WL 1720401 at *3 (finding the injury alleged in the underlying action did not arise out of an occurrence when the "only damage alleged to have occurred was property damage to [the insured's] work product (the building itself) or damage resulting from the loss of use of that building"); *Baker Residential Ltd. P'ship v. Travelers Ins. Co.*, 10 A.D.3d 586, 586-87 (1st Dep't 2004) (finding that when the underlying action was "'a classic faulty workmanship/construction contract dispute,' . . . the damages sought therein did not arise from an 'occurrence' resulting in damage to property distinct from [the insured's] own work product, as contemplated by the [CGL] policy"); *Bonded Concrete, Inc.*, 12 A.D.3d at 762 (finding insurer had no duty to defend the insured, a subcontractor being sued by a general contractor for allegedly supplying defective concrete for use in a project, when the "damages sought were the costs of correcting the defect, not damage to property other than the completed work itself"); *Pavarini Constr. Co. v. Cont'l Ins. Co.*, 304 A.D.2d 501, 502 (1st Dep't 2003) ("[A] contract default under a construction contract is not to be equated with an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions' under the subject [CGL] policies."); *Savik, Murray & Aurora Constr. Mgmt. Co., LLC v. ITT Hartford Ins. Grp.*, 2010 WL 936207, at *2 (N.Y. Sup. Ct. Jan.

---

[4] The parties do not address the issue, but the Court assumes *arguendo* that the Underlying Action has alleged "property damage" as that term is defined under the Policy.

25, 2010) (finding that the underlying action did not seek costs that arose from an "occurrence" when the damages sought were to "correct defective installation" that was caused by the insured's "failure to supervise contractors, their services and the installation of materials"); *Adami v. C.J. Rubino & Co., Inc.*, 2009 WL 632712, at *3 (N.Y. Sup. Ct. Mar. 11, 2009) (finding alleged property damage did not arise from an occurrence when the underlying action stemmed from a "dispute between plaintiff and the defendants regarding the quality of the workmanship" provided).

This determination is not affected in any manner by the fact that the Amended Complaint in the Underlying Action sets forth causes of action for negligence and breach of express and implied warranties, because those claims "represent nothing more than [ ] damage claim[s] for the same breach of contract." *See George A. Fuller Co.*, 200 A.D.2d at 259-60 ("A contract default under a construction contact is not transformed into an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions' by the simple expedient of alleging negligent performance or negligent construction."); *see also Amin Realty*, 2006 WL 1720401 at *4 (noting that although the underlying action asserted a negligence claim, the claim actually involved the contractor's "failure to meet its contractual obligations," and "courts in New York and in this Circuit have made clear that [CGL] policies do not provide coverage where the complaint sounds in contract and not in negligence") (quoting *Royal Ins. Co. v. Ru-Val Elec. Corp.*, 1996 WL 107512, at *2 (E.D.N.Y. Mar. 8, 1996) (internal quotation marks and alteration omitted)).

Because the Court has determined that the property damage to the pool did not arise out of an "occurrence" pursuant to the Policy, it need not determine whether any exclusions from

coverage would apply. *See AARK Const. Grp.*, 526 F. Supp. 2d at 356 n.2. Loebs argues that it would be incorrect for the Court to restrict its analysis to the presence or absence of an "occurrence" without also considering the effect of any Policy exclusions or exceptions to those exclusions. (*See* Pl.'s Mem. at 13-14.) The case cited by Loebs as support for this assertion, however, specifically states that "[t]he insured has the *initial burden* of providing that the damage was the result of an 'accident' or 'occurrence,' to establish coverage" and that "[*o*]*nce coverage is established*, the insurer bears the burden of proving that an exclusion applies." *Consol. Edison Co. of N.Y.*, 98 N.Y.2d at 220 (emphases added) (cited by Pl.'s Mem. at 14).

Loebs urges that, rather than follow the lead of the numerous New York and Second Circuit courts outlined above, the Court should rely upon decisions made by courts in other jurisdictions. Loebs directs the Court to an article published in the Fall 2008 volume of <u>The Construction Lawyer</u> "for an overview of how the issue presented here has been playing out across the nation." (Pl.'s Mem. at 3 n.3.) The article provides the following overview of its opinion as to the appropriate framework for determining the scope of a CGL policy's coverage:

> Like most insurance policies, [CGL] policies begin with a broad grant of coverage, which is then limited in scope by exclusions. Exceptions to exclusions narrow the scope of the exclusion and, as a consequence, add back coverage. *However, it is the initial broad grant of coverage, not the exception to the exclusion, that ultimately creates (or does not create) the coverage sought*. . . . The legal obligation to pay [ ] must arise from an 'occurrence,' . . . [thus,] construction defect coverage litigation often boils down to a dispute first over the meaning of the word 'accident' within the definition of 'occurrence' and then the scope and application of the 'your work' exclusion.

David Dekker, Douglas Green, Stephen Palley, *The Expansion of Insurance Coverage for Defective Construction*, The Construction Lawyer, Fall 2008, at 20 (emphasis added). Overall,

13

this initial opinion seems to be in accord with the principles set forth by this Court here.

The article goes on to discuss court decisions from, *inter alia*, Florida, Texas, and South Carolina that, "[w]hile cautioning that [exceptions to] exclusionary clauses cannot be relied upon to create coverage," decided to read policy language initially granting coverage together with exclusions and exceptions to exclusions (such as the Subcontractor Exception) in order to determine whether costs to repair property damage resulting from faulty workmanship should be covered. *Id.* at 21. The article concludes by warning readers to "Check Your Jurisdiction" because "contrary authority" exists in some states and, in those jurisdictions, "practitioners need to take extra care to address risks associated with subcontractor construction defects . . . ." *Id.* at 23.

Based upon this article and cases from other jurisdictions, Loebs argues that it is entitled to coverage (or there is a reasonable possibility that it is entitled to coverage) because a subcontractor (Top Tile) performed the tile work on the pool[5] and Hartford was on notice that Top Tile had caused the damage at issue. According to Loebs, therefore, even though the "Damage to Your Work" exclusion in the Policy would ordinarily exclude coverage for damage to the pool, the Subcontractor Exception to the "Damage to Your Work" exclusion (pursuant to which coverage for damage arising out of Top Tile's work would not be excluded) comes into play. Loebs argues that the Court should follow the lead of courts in other jurisdictions and consider all of this information together when determining whether there was a "reasonable

---

[5] The Court will assume *arguendo* that there do not exist any genuine issues of material fact regarding whether Top Tile was the sole installer of the tile at issue, despite Signoretti's assertions that he, a Loebs employee, "was primarily responsible for actual performance of the tile work in issue." (Signoretti Aff. ¶ 1.)

14

possibility of coverage" sufficient to trigger Hartford's duty to defend.

Unfortunately for Loebs, however, it has cited no authority within either New York State or the Second Circuit that would support its position. In fact, as set forth at length above, New York and Second Circuit courts addressing this issue have come down squarely on the opposite side. There is, simply put, no authority from within this jurisdiction that would support Loebs's argument, and the Court is not persuaded by the cited outside authority. *See Amin Realty*, 2006 WL 1720401 at *7 (declining to adopt the view of courts in other jurisdictions that "negligent acts of the insured causing unexcepted damage" to the work product "are within the definition of an accident/occurrence in the context of a CGL insurance policy" because "this case is governed by the law of New York, which has adopted the majority rule: to wit, that defective workmanship, standing alone, is not an occurrence under a CGL policy").

Finally, Loebs seems to analogize this case to so-called "mere component" cases, which have been defined as follows:

> In each of those cases, the insured's product was integrated into a larger entity or structure that was *not* the work product of the insured; when the component product proved to be defective, the defect caused damage to the larger structure and thus constituted an 'external force' with regard to the property or persons of third parties. In such a situation, the courts concluded, that portion of the damage that extended beyond the insured's work product could be found to have resulted from an "accident" or "occurrence."

*Amin Realty*, 2006 WL 1720401 at *6 (internal citations omitted, emphasis in the original). Loebs argues that the damages asserted in the Underlying Action went beyond mere claims that "the tiles [were] installed in rag-tag fashion (which would make the claim the equivalent of, say, one for costs of re-painting a paint job for which the wrong color was used)." (Pl.'s Mem. at 21.)

15

Instead, "the case [ ] involves indications that the substrate [beneath the tile] was physically damaged [ ] and that in conjunction with remedying such injury[,] the tile, although not itself physically injured, necessarily had to be demolished (because [it was] bonded to the substrate)." (*Id.*)

This is not a "mere component" case; Loebs was retained as a subcontractor to construct and install the entire swimming pool and, as such Loebs "was responsible for all the labor and materials that went into fabricating the [pool], and not just for the [tile or substrate] on which [Top Tile] was working when the damage occurred." *See Amin Realty*, 2006 WL 1720401 at *6. Thus, this is not a case where the insured's work on one component of the project caused damage to property beyond its own work product – Loebs's work product was the entire pool.

## CONCLUSION

For the reasons set forth above, Loebs's motion for summary judgment is denied, Hartford's motion for summary judgment is granted, and the Complaint is dismissed in its entirety. The Clerk of the Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
      March 26, 2012                      /s/
                                               Denis R. Hurley
                                               Unites States District Judge